UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| WILLIAM CHAD PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-150-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CORRECTIONS CORPORATION OF | ) | **AND ORDER** |
| AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Federal courts are adjudicators, not advocates. As a general rule, they should not raise issues that counsel overlooked or hunt for facts that counsel neglected to present. *See* Geoffrey C. Hazard et al., Pleading and Procedure: State and Federal Cases and Materials 119 (10th ed. 2009). Arguing the case is the litigants' job, and failing to do so can be fatal to a party's claim. Such is the case here.

Defendant Corrections Corporation of American ("CCA")[1] filed a motion for summary judgment. R. 13. CCA argues that plaintiff William Chad Perry failed to demonstrate any of the four required elements of a prima facie case under the Kentucky Whistleblower Act ("KWA"). *See* Kentucky Rev. Stat. § 61.102. In his response, Perry did not dispute CCA's characterization of his original complaint or its argument that his complaints do not qualify as a whistleblower report. For that reason

---

[1] While Perry sued CCA and Otter Creek separately, they are not distinct entities— Otter Creek was owned and operated by CCA. *See* R. 13-1. Perry concedes this fact. *See* R. 16 at 1.

and the other reasons given below, CCA's motion for summary judgment, R. 13, must be granted.

## BACKGROUND

CCA operated the Otter Creek Correctional Facility, a minimum- and medium-security prison for Kentucky state prisoners. In February 2011, two inmates at Otter Creek approached correctional officer William Perry and asked him to help smuggle drugs into the prison. W. Perry Dep., R. 14-1 at 21. Perry reported the inmates' plot to internal affairs investigator Dwight Crowell. Crowell, in turn, enlisted Perry to gain information about drug trafficking inside Otter Creek. *Id.*

The scheme failed to materialize, apparently because the drug couriers never arrived for the pickup. R. 15-1 at 7; *see also* R. 13-1 at 3; R. 16 at 2. Following the collapse of Crowell's plan, word of Perry's role in the operation got out. Not surprisingly, the inmates were not happy, and some of them threatened Perry. R. 14-1 at 22. Perry informed Warden Grady Perry (no relation) of the threats, and the Warden transferred him to a post without direct inmate contact. R. 13-1 at 3; R. 16 at 2. But the threats continued. So Perry complained to Otter Creek's management a second time. R. 14-1 at 22. Feeling that management took his concerns too lightly, Perry called the CCA Ethics Hotline. *Id.* The Warden learned of this call and moved the inmates who threatened Perry to other prisons. *Id.* at 23. Perry claims that the CCA staff ostracized him because he made this call. R. 16 at 1, 4.

Perry subsequently applied, and was hired, to work at Canteen Corporation, a separate company that ran Otter Creek's kitchen. R. 13-1 at 10, R. 16 at 2. Shortly before Perry's first day at his new job, his Canteen supervisor informed him that the

Warden did not want him in the kitchen. R. 14-1 at 24. Perry called the Warden to ask why he was barred from the kitchen, and the Warden implied that it was because of Perry's call to the Ethics Hotline. *Id.* CCA contends that this temporary ban was safety-related and that the Warden had continued concerns about Perry's ability to interact with inmates at Canteen. R. 13-1 at 4. Perry then called the Hotline again and filed a grievance against the Warden. R. 14-1 at 24-25.

The Warden ordered an investigation into Perry's safety at Otter Creek. R. 13-1 at 4. Based on inmate interviews, inmate monitoring, and a written statement by Perry, the Warden determined that Perry's safety was not at risk and cleared him to work in the kitchen for Canteen. *Id.* Perry says that CCA employees harassed him during his time at Canteen because of his Hotline calls. R. 16 at 3. Specifically, Perry contends that he was verbally abused by CCA employees, R. 14-1 at 26-27, and that CCA employees conspired to get him fired from Canteen. *Id.* at 25-32. Perry also argues CCA employees and their relatives have harassed him since he filed this suit. *Id.* at 62-74. Perry believes that he was forced to resign from Canteen Corporation because of this ongoing harassment.

Perry sued CCA for violations of the Kentucky Whistleblower Act. Compl., R. 1-1 at 3; Kentucky Rev. Stat. § 61.102. CCA, which is an out-of-state corporation, removed this case to federal court, R. 1. After the close of discovery, R. 6, CCA timely moved for summary judgment, R. 13.

## ANALYSIS

In a motion for summary judgment, defendants often argue that there are no material issues of fact that justify proceeding to trial. Plaintiffs have an obligation to

3

respond, and those who ignore such arguments do so at their own risk.  CCA filed an eight-page argument detailing why Perry did not meet any of the four requirements for a prima facie case under the KWA.  What did Perry do in response?  He filed a two-paragraph argument.  An argument's length does not always correlate with its merit, but a party facing summary judgment must respond to meritorious arguments and point to material issues of fact that exist for trial.  Perry's failure to adequately respond is not fatal, *see Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991), but it makes CCA's job much easier.  To prevail at summary judgment, CCA must show the absence of genuinely disputed material facts.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986) (explaining that a defendant may carry its burden on summary judgment by demonstrating "an absence of evidence to support the nonmoving party's case").  CCA has met its burden, so Perry had to counter CCA's motion with specific evidence demonstrating genuine issues for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Perry has not done so.

A.   **Claims Against Canteen Corporation**

Perry appears to argue that his claims against CCA also function as claims against Canteen Corporation.  *See* R. 16 at 4.  They cannot since Perry never sued Canteen.  How does he try to get around this oversight?  He responds to CCA's argument with the assertion that Canteen and CCA are "closely related entit[ies]." R. 16 at 4.  There are two problems with this assertion.  First, he fails to point to a single piece of evidence that establishes that Canteen and CCA are closely related. This court is not required to double-check to ensure he did not miss something.  *See Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986); *Betkerur v. Aultman Hosp.*

4

*Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). Second, he never explains why a close relationship between CCA and Canteen leads to the legal conclusion that his claim against CCA is also a claim against Canteen. *See, e.g.*, *Waldon v. Hous. Auth. of Paducah*, 854 S.W.2d 777, 780 (Ky. Ct. App. 1991) (requiring Company A to have a proprietary interest in Company B before liability attaches for Company B's actions). Perry simply has not pointed to any facts from which the Court could conclude that CCA owns Canteen, has an ownership interest in Canteen, or is even "closely related" to Canteen—whatever that may ultimately mean. Without such facts, Perry's failure to name Canteen as a defendant means he cannot bring a claim against it. Therefore summary judgment is appropriate on Perry's claims against Canteen.

B.    **Claims against CCA**

To survive CCA's motion for summary judgment, Perry had to identify legally sufficient evidence for a reasonable jury to find for him on all four elements of his KWA claim. *See* Fed. R. Civ. Pro. 56(c). Those four elements are: (1) that CCA was an officer of Kentucky or its political subdivisions; (2) that Perry was a state employee; (3) that Perry made a good faith report of a suspected legal violation, mismanagement, or a risk to the public; and (4) that CCA punished Perry for his report or acted in a way to discourage reporting. *See* Ky. Rev. Stat. Ann. § 61.102; *Woodward v. Com.*, 984 S.W.2d 477, 480-81 (Ky. 1998). Each element is a hurdle in the way of Perry's claim that he cannot clear.

The first element requires Perry to show that CCA was an officer of the state or political subdivision—essentially that it was a state actor. Under the whistleblower statute, a state actor is someone who may act on the state's behalf with respect to

5

policymaking or employee supervision. *See* Ky. Rev. Stat. Ann. § 61.101(2). CCA claims it does not have this authority. In response, Perry says that since CCA was under contract with the Commonwealth to provide incarceration and inmate services it must be a state actor. *See* R. 16 at 4. The Court could definitely envision situations where a contracting party assumes obligations that make it a "state employer" under the KWA. But Perry does not point to facts that show CCA did so. *Anderson*, 477 U.S. at 248; *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012). For example, Perry does not provide the contract, does not provide specifics of how CCA became a state actor when it entered into the contract, and does not cite other cases interpreting similar contracts. The bare existence of a service contract is insufficient to make the provider a state entity. *See, e.g.*, *Talbott v. Pub. Serv. Comm'n*, 163 S.W.2d 33, 35 (1942) (holding that independent contractors are not state employees). KWA claims can only be brought against state actors. Could a private actor who performs public functions be a state actor under the KWA? Yes. Has Perry presented any facts showing that is the case with CCA? No. As such, summary judgment on this factor alone is appropriate. *Donald v. Sybra, Inc.*, 667 F.3d 757, 760 (6th Cir. 2012) (stating that the moving party may demonstrate the absence of triable issues by "pointing to an absence of evidence to support the non-moving party's claim" the moving party "must then set forth the specific facts showing that there is a genuine issue for trial").

The second element requires Perry to demonstrate that he was a state employee. Perry made two calls to the Ethics Hotline: one when he was employed by

6

CCA and one when he was employed by Canteen. Assuming those calls qualify as "reports" under the KWA, the KWA requires that Perry have been a state employee.

Perry claims the CCA staff ostracized him after his first Hotline call and before he left for Canteen. R. 16 at 1, 4. During that period of time, he was a CCA employee. As explained above, Perry produced no facts to show that CCA is a state actor. Thus, he has produced no evidence that he was a state employee.

Perry also claims the CCA staff ostracized him after his second Hotline call. During that period, Perry was a Canteen employee. This fact presents two problems for Perry. First, for Perry to have been a state employee during that period, Canteen must be a state actor. But Perry did not present a single fact to demonstrate Canteen was a state actor. Second, it is unclear whether the KWA protects former state employees who suffer retaliation from their former employer while working at a private company. It is possible that a liberal construction of the KWA would allow such a claim. *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 793 (Ky. 2008) ("[T]he Whistleblower Act must be liberally construed to serve its remedial purpose."). This is an interesting question that would require more extensive briefing. Were the other issues close, the Court would be faced with deciding this issue. Since the other issues are not close, the Court leaves this question to the Kentucky courts to decide in the first instance. *Bell Cty. Bd. of Elections v. Bell Cty. Volunteer Fire Dept., Inc.*, No. 11-cv-284-ART, 2011 WL 5101788, at *2 (E.D. Ky. Oct. 25, 2011) (Thapar, J.) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

No matter how you slice the first two prongs, Perry's claim fails at the third prong. The third prong requires Perry to demonstrate that his Hotline calls reported a

legal violation or "mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety." Ky. Rev. Stat. Ann. § 61.102. CCA argues that he has not done so. R. 13-1 at 13 (violation of federal or state law), 15 (mismanagement or abuse). Perry does not respond to this argument.

CCA characterizes Perry's Hotline complaints as "largely about the administrator's non-responsiveness to [Perry's] safety and personnel conflicts." R. 13-1 at 15. Since Perry did not dispute this description, the Court accepts CCA's characterization as true. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (where the nonmovant does not respond to a dispositive motion, the "[C]ourt's reliance on the facts advanced by the movant is proper and sufficient"). And CCA is correct that the KWA does not cover personnel conflicts. *See Farwell v. Estill Cty. Bd. of Educ.*, No. 2008-CA-001946-MR, 2010 WL 4739936 (Ky. Ct. App. Nov. 24, 2010) ("The [plaintiff's letter], complaining primarily of personnel conflicts, does not, as a matter of law, qualify on its face as a whistleblower report.").

The KWA does cover "substantial and specific danger[s] to public health or safety." Ky. Rev. Stat. Ann. § 61.102. Perry's first call to the Ethics Hotline (while he was at CCA) did involve his safety, but he never demonstrates that either Hotline call alleged a *substantial* and *specific* danger as required by the KWA. And the Court need not independently explore this issue; nor could it since Perry never provided a factual response. *See Big Dipper Entm't, L.L.C. v. City of Warren*, 641 F.3d 715, 721-23 (6th Cir. 2011); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008); *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2005) ("A moving party can meet its burden under Rule 56(c) by showing—that is, pointing out to the district

court—that there is an absence of evidence to support the nonmoving party's case." (internal quotations and citations omitted)).

Finally, under the fourth requirement Perry must show that CCA retaliated against him. Perry asserts that he suffered harassment from CCA employees while employed at CCA and Canteen. *See* R. 16 at 1-4. First, Perry states that he left CCA for Canteen "after the pressure of his isolation from staff . . . had become unbearable." *Id.* at 1. But vague generalities are insufficient to escape a properly supported motion for summary judgment. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Rather, he must support his generalizations with specific facts. *See Anderson*, 477 U.S. at 247. He has not done so. Second, CCA pointed to specific facts demonstrating that Perry was barred from the Canteen for safety reasons, was the subject of disciplinary write-ups for legitimate wrongdoing, and fought with CCA employees over personal matters. *See* R. 13-2 (Affidavit of Warden Grady Perry); 13-4 (Affidavit of Ann Meade); R. 13-7 (Affidavit of Dwight Crowell); R. 13-8 (Affidavit of Amy Tackett). Perry's response falls into one of two traps. Either he fails to contest CCA's explanation (as in the case of the temporary bar from Canteen or the disciplinary write-ups), or simply asserts that the event was retaliatory without providing any factual support that would justify this question going to a jury. *See* R. 16 at 1-4. These assertions are insufficient to meet Perry's burden under Rule 56. *See Hoover v. Walsh*, 682 F.3d 481, 501 (6th Cir. 2012). By simply responding without factual support, Perry failed to demonstrate that a reasonable jury could find the four required elements of a prima facie case under KWA: that CCA's was a state actor, that he was a state employee, that his Hotline calls qualified as KWA reports,

and that CCA retaliated for his reports. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## CONCLUSION

It is therefore **ORDERED** that CCA's motion for summary judgment, R. 13, is **GRANTED.** The Court will enter a separate judgment. CCA's motion in limine, R. 27, and Perry's motion for an extension of time, R. 32, are **DENIED AS MOOT**.

This the 23rd day of October, 2012.

Signed By:
*Amul R. Thapar* AT
United States District Judge